UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Denys BELL,

                        Plaintiff,

    v.

EQUINOX HOLDINGS, INC.,

                        Defendant.

No. 25-CV-1644 (KMK)

OPINION & ORDER

---

KENNETH M. KARAS, United States District Judge:

    Denys Bell ("Bell" or "Plaintiff") brought this Action against his former employer, Equinox Holdings, Inc. ("Equinox" or Defendant), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), § 191 *et seq.* (*See generally* Compl. (Dkt. No. 1).) The Parties now seek approval of their proposed settlement (the "Settlement Agreement" or "SA"). (*See generally* Letter from Plaintiff's Counsel ("Pl.'s Letter") (Dkt. No. 19).) For the reasons that follow, the Parties' proposed settlement is approved.

## I. Background

### A. Factual Background

    Plaintiff worked as a maintenance associate at the Defendant's fitness clubs in the State of New York. (*See* Compl. 1.) In this capacity, Plaintiff was responsible for, among other duties: cleaning the locker room, bathrooms, and cycle rooms; wiping bicycles; and organizing the weights. (*See id.* at 7.)

Plaintiff has asserted wage and hour violations. (*See id*. at 1.) Plaintiff alleges that he and all other persons similarly situated performed manual labor for more than 25% of their work hours and that Defendant failed to pay their wages weekly and within seven calendar days after the end of the workweek as required by NYLL § 191. (*See id*.) Accordingly, Plaintiff sought injunctive relief, liquidated damages, and attorney's fees and costs. (*See id*. at 2.)

B. Procedural History

Plaintiff filed his Complaint on February 26, 2025. (*See generally* Compl.) Defendant submitted its Response on May 13, 2025. (*See* Dkt. No. 12.) On June 18, 2025, Plaintiff filed a Settlement Agreement along with accompanying papers for the Court's approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (*See* Dkt. No. 17). On July 18, 2025, Plaintiff submitted a letter to refile the Settlement Agreement. (*See* Letter from Plaintiff's Counsel ("Pl.'s Letter") (Dkt. No. 19).)

II. Discussion

A. Standard of Review

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute." "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." *See* Fed. R. Civ. P. 41(a)(2). The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015) (citation omitted); *see also*

*Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same); *Briggs v. DPV Transportation, Inc.*, No. 21-CV-6738, 2021 WL 6111917, at *2 (S.D.N.Y. Dec. 27, 2021) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (citation omitted); *see also Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same); *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (same). Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic

> region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (citation and quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Jambox*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (citation and quotation marks omitted).[1] To this end, courts require information surrounding

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (quotation marks omitted) (quoting *Nights of Cabiria, LLC*, 96 F. Supp. 3d at 176).

B. Analysis

    1. Whether Settlement Amount is Fair and Reasonable

Under the Settlement Agreement, Defendant agreed to pay a total of $15,000 (the "Settlement Amount") to resolve Plaintiff's claims. (*See* Pl.'s Letter 2.) Of this amount, $5,270

---

[1] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (citation and alteration omitted).

will go to Plaintiff's counsel for fees and costs (*See* SA ¶ 2(b).), and Plaintiff's net settlement will be $9,730.  (*See* SA ¶ 2(a).)[2]

Plaintiff estimates his potential recovery under FLSA at trial to be approximately $33,800.  (*See* Pl.'s Letter 2.)  Plaintiff estimates that if the jury concludes that the alleged violation was willful and that a three-year statute of limitations should be applied, his potential recovery would be $50,700.  (*See id.*)  A net recovery of $9,730 would therefore represent 19% – 29% of Plaintiff's potential recovery.  In the absence of a settlement, Plaintiff faces significant litigation risk given a recent amendment to NYLL § 198 that restricts liquidated damages for NYLL § 191 violations to cases where there has already been a finding of a violation.  (*See id.* at 1).  *See* NYLL § 198(1-a) ("If an employer is a first-time offender, an employee can only recover lost interest on the delayed wage payment … For violations occurring after May 9, 2025, employees may recover liquidated damages (equal to 100% of delayed wages), but only if the employer is a repeat offender.").  Additionally, Plaintiff asserts that courts in the Second Circuit are divided on whether merely failing to make timely payments under NYLL § 191 constitutes a violation of the FLSA's prompt payment requirement.  (*See id.* at 1–2.)  *Compare, e.g.*, *Rosenbaum v. Meir*, 658 F. Supp. 3d 140, 147 (E.D.N.Y. 2023) (concluding that late wages are violations of the prompt payment requirement); *Beh v. Cmty. Care Companions Inc.*, No. 19-CV-1417, 2021 WL 3914297, at *4 (W.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, No. 19-CV-1417, 2021 WL 3914320 (W.D.N.Y. June 23, 2021) (upholding that the FLSA

---

[2] Courts evaluate the fairness of a plaintiff's recovery after deducting attorneys' fees and costs.  *See Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2020 WL 5898956, at *3 (S.D.N.Y. Oct. 5, 2020) (subtracting attorney's fees and costs to assess whether plaintiff's recovery is fair and reasonable); *Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) (same); *Garcia v. Cloister Apt Corp.*, No. 16-CV-5542, 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019) (same).

requires prompt payment), *with Rogers v. City of Troy*, N.Y., 148 F.3d 52, 60 (2d Cir. 1998) (holding that a change in payday is not prohibited by the FLSA when "there is no unreasonable delay in the payment of wages) *and McDonald v. H&M Fashion USA Inc.*, No. 24-CV-2476, 2025 WL 744014, at *3 (S.D.N.Y. Mar. 6, 2025) (concluding that an allegation of the employer's failure to pay workers within seven days of performing work, standing alone, is insufficient to state a claim under the FLSA). Thus, the Court finds that, given the litigation risks at issue, the settlement is reasonable. *See, e.g.*, *Santos v. YMY Mgmt. Corp.*, No. 20-CV-1992, 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving a settlement amount that is "approximately 18% of Plaintiff's total alleged damages and approximately 39% of his total alleged minimum wage and overtime owed"); *Gervacio v. ARJ Laundry Servs. Inc.*, No. 17-CV-9632, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (approving settlement sum representing approximately 20% of the maximum possible recovery amount); *Beckert v. Ronirubinov*, No. 15-CV-1951, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (approving award of approximately 25% of maximum recovery where the plaintiff faced litigation risks); *Felix v. Breakroom Burgers & Tacos*, No. 15-CV-3531, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (approving settlement amount of less than 25% of the maximum possible recovery as reasonable "[i]n light of . . . litigation risks").

### 2. Good Faith

The Court is satisfied that the Settlement Agreement was negotiated competently, in good faith, at arm's length, and that there was no fraud or collusion. (*See* Pl.'s Letter 2 (noting that the settlement was reached "through arm's-length negotiations").)

### 3. Similarly Situated Plaintiffs

While Plaintiff asserts that he is bringing a FLSA collective action in his Complaint, (*see* Compl. at 3-7), no collective action was ever certified, and no other plaintiff joined the action, (*see generally* Pl.'s Letter). *See Fisher v. SD Protection Inc.*, 948 F.3d 593, 598 (2d Cir. 2020) (focusing solely on whether the settlement is fair to the individual plaintiff even though the FLSA case was initially framed as collective action, but only the named plaintiff remained after settlement). That Plaintiff will be the only employee affected by the settlement and that no other employee joined the action are facts that militate in favor of settlement. *See Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816, 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (noting that no other employee came forward and that the plaintiff would "be the only employee affected by the settlement and dismissal," and that these facts supported approval of the proposed settlement); *Santos v. Yellowstone Props.*, Inc., No. 15-CV-3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (noting that settlement approval was supported by the fact that only the named plaintiffs would be impacted by the agreement); *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, (S.D.N.Y. Nov. 30, 2015), at *2 (noting that the fact that "[n]o other employee ha[d] come forward" supported settlement approval).

    4.  Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id*. at 206 (quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to

the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants— including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues"). To that end, releases must generally be limited to wage and hour issues, *see Cheeks*, 796 F.3d at 206, and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation and quotation marks omitted).

> Here, the Settlement Agreement release provides in relevant part:
>
> Bell, on behalf of himself, his heirs, successors, representatives, assigns, attorneys, agents, executors and administrators hereby knowingly and voluntarily releases all known and unknown claims, promises, causes of action, or similar rights of any type that he presently has or may have, known or unknown, with respect to Equinox, its past, present, and future owners, affiliates, related business entities, parents, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, trustees, members, board members, employees, volunteers, stockholders, representatives, insurers, attorneys, in their individual and representative capacities, and each and every one of them and their heirs, executors, administrators, successors and assigns, and all persons acting by, through, under, or in concert with any of them (individually and/or collectively, the "Equinox Releasees"), arising under the Fair Labor Standards Act, the New York Labor Law, or any other applicable federal, state, or local laws relating to the payment of wages, existing up until the date on which Bell executes this Agreement.

(SA ¶ 4.)

Courts in the Second Circuit have approved settlements where similar language was present. *See, e.g.*, *Fleming v. NADAP*, *Inc.*, No. 23-CV-8892, 2024 WL 5056352, at *4 (S.D.N.Y. Dec. 9, 2024) (upholding a release that applies to "any and all claims of any kind arising under the [FLSA] or any other rights to wages, known or unknown," because the language was limited to wage-related issues); *Ezpino v. CDL Underground Specialists, Inc.*, No. 14-CV-3173, 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (approving a release that discharged all claims against multiple parties, including "[d]efendants, their officers, agents, legal representatives, predecessors, successors, assigns, trustees, administrators, heirs, executors and insurers . . . from all actions, causes of action, and suits, against the [releasees], which [p]laintiff or [p]laintiff's heirs, executors, administrators, successors, and/or assigns, may now have, arising out of his employment with CDL limited and related to claims for unpaid wages and overtime arising under the Fair Labor Standards Act…"), *report and recommendation adopted*, No. 14-CV-3173, 2017 WL 3037406 (E.D.N.Y. July 17, 2017). "[W]hile broad, the terms of the release . . . relate[] specifically to wage and hour issues without encompassing, for example, prospective discrimination claims." *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017; *cf. Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (rejecting proposed settlement releasing "any and all FLSA claims and NYLL claims of any kind or nature"). Therefore, the Court approves the release.

### 5. Attorney Fees

Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorney fees. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL

4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)).  Although courts may elect to award fees by considering either the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method." *Zorn-Hill*, 2020 WL 5578357, at *5 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)).  But even where attorney fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records.").  A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181.  The Court must also determine the reasonableness of the hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

      Here, Plaintiff's counsel seeks $5,270.00 for attorneys' fees and costs, which is approximately 33.3% of the net settlement costs.  (*See* Pl.'s Letter 3.)  Courts in the Second Circuit routinely award attorney fees in FLSA settlements of one-third of the total recovery.  *See Zorn-Hill*, 2020 WL 5578357, at *6 (collecting cases); *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc.*, No. 13- CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting

that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), *adopted by* 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016).

Plaintiff's counsel applied the lodestar method to corroborate the reasonableness of the fee. (*See* Pl.'s Letter 4.) Attorney Peter A. Romero spent 10.4 hours working on the matter at a rate of $450 per hour, resulting in a lodestar of $4,680. (*See* Pl.'s. Letter 5; Ex. B to Pl.'s Letter, Dkt. No.19). Attorney David D. Barnhorn spent 1.7 hours working on the case at a rate of $350, which results in a lodestar of $595. (*See id*.) Plaintiff's counsel has practiced law for over 20 years and focused his practice almost entirely on employment law throughout his career. (*See* Pl.'s Letter 4.) The Court finds that these rates are reasonable based on the substantiation provided by Plaintiff's counsel. *See, e.g.*, *Lora v. J.V. Car Wash, Ltd.*, No. 11-CV-9010, 2015 WL 7302755, at *5 (S.D.N.Y. Nov. 18, 2015) (finding a rate of $500 per hour for an experienced litigator in FLSA issues reasonable); *Coakley v. Webb,* No. 14-CV-8438, 2016 WL 1047079, at *6 (S.D.N.Y. Mar. 10, 2016) (concluding "that a $575 hourly rate credits the extensive experience and qualifications of [the attorneys seeking reimbursement]"); *Munoz v. Manhattan Club Timeshare Ass'n, Inc.,* No. 11-CV-7037, 2014 WL 4652481, at *4 (S.D.N.Y. Sept. 18, 2014) (finding $400 per hour to be a reasonable rate for an experienced litigator with nearly 20 years of experience), *aff'd*, 607 F. App'x 85 (2d Cir. 2015); *LV v. N.Y.C. Dep't of Educ.,* 700 F. Supp. 2d 510, 519 (S.D.N.Y. 2010) (finding "$600 [to be] a reasonable rate" for two senior lawyers and finding a rate of $375 an hour for an attorney with 10 years of experience "consistent with rates recently awarded to comparably experienced lawyers in this district"). The lodestar amount comes to a total of $5,275. (*See* Pl.'s. Letter 4.) The total of $5,270 in attorneys' fees and costs requested by Plaintiffs' counsel thus incorporates a lodestar multiplier of approximately 1.0. "[A] multiplier no higher than two is appropriate." *Lazo v. Kim's Nails at*

*York Ave., Inc.*, No. 17-CV-3302, 2019 WL 95638, at *3 (S.D.N.Y. Jan. 2, 2019); *see also Cortes v. New Creators, Inc.*, No. 15-CV-5680, 2016 WL 3455383, at *9 (S.D.N.Y. June 20, 2016) (approving a lodestar multiplier of 1.24 in an FLSA settlement); *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *15 (S.D.N.Y. Sept. 10, 2013) (approving a lodestar multiplier of 1.0 in an FLSA action).  The requested attorneys' fee award and costs are approved.

### III. Conclusion

For the foregoing reasons, the Parties' request for approval of their Settlement Agreement is granted.  The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

DATED:   July 29, 2025
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE